IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Michael Cowart,** ) | Civil Case No. 2:15-cv-3580-RBH-MGB |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Greenville, County of, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

Plaintiff Michael Cowart is a detainee (#089077) at the Greenville County Detention Center in South Carolina. He is proceeding *pro se* and *in forma pauperis*. He has filed this civil action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. §636(b)(1), and Local Civil Rule 73.02(B)(2) (D.S.C.), the Magistrate Judge is authorized to review the complaint and to submit findings and recommendations to the District Judge. After careful review, the Magistrate Judge recommends that the Complaint be **dismissed**, with prejudice and without issuance and service of process, for the following reasons:

I.  Procedural History

On April 14, 2015, Plaintiff (proceeding IFP and pro se) filed a §1983 case, complaining that: 1) he was not given a double mattress for his arthritis and "cracked tailbone" in January and February 2015; and 2) he was charged $10 for a medical visit on January 26, 2015, but should have been charged only $5.00. See Case No. 2:15-cv-01617-RBH-MGB. On August 10, 2015, the District Judge adopted the Report and Recommendation and summarily dismissed the case without prejudice. (DE# 22, Order). The basis for dismissal was "failure to state a claim." This court may take judicial notice of such records. *See, e.g., Assa'ad-Faltas v. South Carolina*, 2012 WL 6103204 (D.S.C. Nov. 14, 2012), *adopted by* 2012 WL 6106421 (D.S.C. Dec. 10, 2012) (J.

Wooten) (observing that a court has "the right to take notice of its own files and records"), *appeal dismissed* (4th Circ. 13-1034) (Jun 26, 2013).

On September 4, 2015, the Plaintiff (proceeding IFP and pro se) filed the present § 1983 case, again complaining that: 1) he was not given a double mattress for his arthritis and "cracked tailbone" in January and February 2015; and 2) he was charged $10 for a medical visit on January 26, 2015, but should have been charged only $5.00. Civil Case No. 2:15-cv-3580-RBH-MGB. In the section entitled "previous Lawsuits," the complaint form asks "Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action…" (DE# 1, ¶ 1A). Plaintiff checked "No." Review of the complaint, however, reveals that Plaintiff is re-asserting the same claims, based on the same facts, against the same defendants, seeking the same damages.[1] In any event, as the prior case was summarily dismissed "without prejudice," res judicata does not apply, and the Magistrate Judge will continue with the analysis.

II. The Parties and Claims

In the present § 1983 action, Plaintiff names the following persons as Defendants: (1) the County of Greenville; 2) John Vandermosten, Assistant County Admin.; 3) Operation Admin. Scotti Bodiford; 4) Medical Admin. Tracy Krein; 5) Physician Asst. Rae; 6) Clinical Supervisor April Roberts; and 7) GCDC Employee Lisa McCombs. (DE# 1).

Plaintiff indicates he is attempting to litigate issues of "deprivation of property" and "deprivation of medical care." (DE# 1, ¶IIB). In his own words, he indicates that he "brings this action alleging deprivation of medical care, obtaining funds under false pretense and knowingly under color of state law denied a quality of medical care that was needed." (DE# 1 at 3, "Statement of Claim"). For relief, Plaintiff asks "the Courts to sanction the Greenville County

---

[1] Plaintiff complains about the same incidents in both cases. In the present case, he also attaches notes from two follow-up visits in June/July 2015, but makes no allegations about his medical care at that time. (DE# 1-2 at 10, 11).

Detention Centers Administrators and medical personel (sic) named to award the Plaintiff $1,500.00 A day pain and suffering, $1,500.00 mental stress A day and $2,500.00 A day punitive damages." (*Id*., as in original).

III. Factual Allegations

In his Complaint, Plaintiff alleges that he was in an automobile wreck on October 7, 2014, and suffered injuries including a broken ankle and "cracked tailbone." He indicates he was arrested on October 12, 2014, "booked" into the Greenville County Detention Center ("GCDC"), and "treated by medical." (DE# 1 at 4). Plaintiff attaches medical records from October 2014 through July 2015, reflecting numerous visits with consulting orthopedic specialists for examinations, staple removal, re-casting for his right foot, multiple sets of x-rays of his foot and spine, follow-up visits, and repeated prescriptions (*e.g.*, Tramadol/Ultram, Ibuprofen).[2]

Plaintiff contends that an orthopedic surgeon initially recommended that Plaintiff receive medication and an "extra mattress" to help alleviate pain and discomfort "until his release in January 2015." (DE# 1 at 4). He attaches a medical note from October 21, 2014. The note indicates the surgeon recommended "double mats and (illegible) x 10 days." (DE# 1-2 at 1). The initial recommendation was only for ten days, not "until his release in January 2015." Subsequent notes from three medical visits in October and November do not reflect any recommendation for an extra mattress. The October 21, 2014 note indicated "per GHS Discharge Summary 10-13-14, inmate is to follow up with Dr. Snow in the General Surgery Clinic."

At the follow-up visit on October 27, 2015, board-certified orthopedic surgeon Dr. Bradley M. Snow, M.D., prescribed pain medication for 2 weeks, but did not recommend an extra mattress. (DE# 1-2 at 2). On October 27, 2015, Plaintiff returned to have his incision

---

[2] Tramadol (brand name Ultram) is an analgesic pain reliever used in the management of moderate to moderately severe pain. *See* http://www.medicinenet.com/tramadol.

Page **3** of **12**

staples removed, and the notes indicate Plaintiff was "ambulatory" and "healing well." The orthopedic surgeon did not recommend an extra mattress. (DE# 1-2 at 3). In a follow-up visit on November 24, 2014, the surgeon prescribed Ultram for 2 weeks, but again, did not recommend or mention an extra mattress. (DE# 1-2 at 4). Plaintiff attaches these notes, but does not allege he was deprived of a mattress in this time period.

In his Complaint, Plaintiff alleges that he was subsequently "re-booked" into GCDC on January 14, 2014. (DE# 1 at 4-5). He was charged with multiple offenses, including assault and battery, assault on an officer while resisting arrest, receiving stolen goods, and "possession/concealing/selling/or disposing of stolen vehicle."[3] Plaintiff alleges that he was allowed to see an (unspecified) orthopedic surgeon, who according to Plaintiff, "reinstated his previous pain management schedule." (*Id*.). Plaintiff attaches medical notes from January 26, 2015 when he was seen for x-rays of his right foot. (DE# 1-2 at 6). The notes indicate that orthopedic surgeon Dr. Lyle Jackson, M.D. viewed the X-rays and continued Plaintiff's prescription for pain medication (Tramadol) for four weeks, but did not mention any need for an extra mattress. Plaintiff complains that "during this visit, he was denied an extra mattress."

Plaintiff also alleges that on January 26, 2015, he was charged $10.00 for the medical visit, instead of $5.00 as indicated by the inmate handbook. He contends that he complained and was thereafter charged only $5.00 on February 23, 2015 and March 23, 2015 for the "same kind of visit to medical." (DE# 1 at 6). He alleges that this amounts to "obtaining funds under false pretence (sic)." (*Id*.). He does not indicate who allegedly overcharged him.

In his Complaint, Plaintiff alleges that he had another follow-up visit to the orthopedic clinic on February 23, 2015 and "was again denied an extra mattress altho (sic) he was

---

[3] See http://app.greenvillecounty.org/inmate_search.

experiencing pain and discomfort." (DE# 1 at 5). He attaches medical notes from such visit, but such notes do not mention any request by Plaintiff for an extra mattress, nor indicate that the surgeon recommended an extra mattress at that time. (DE# 1-2 at 7). The medical notes indicate that Plaintiff was seen by "Watson," presumably another consulting orthopedic surgeon at the clinic, as Plaintiff was there for "x-rays of right foot." [4]

Plaintiff alleges he had a follow-up orthopedic visit on May 29, 2015. (DE# 1 at 6). The notes indicate "x-ray L-spine" and "no more x-rays needed on foot." (DE# 1-2 at 9). This note refers to Dr. Watson. Although Plaintiff alleges that the x-rays revealed evidence of a "previously overlooked" vertebral fracture (DE# 1 at 6), the notes do not reflect that the surgeon recommended an extra mattress at that time. (DE# 1-2 at 9). Plaintiff's Complaint makes no allegations about any subsequent care, although he attaches pages from two more follow-up visits on June 22 and July 27, 2015. The notes recommended that Plaintiff work on "core strengthening" and suggested that he "consider getting an MRI when he is discharged from jail," but indicated that Plaintiff was "without weakness or progression in symptoms at this time, so not urgent." (DE# 1-2 at 10, 11). The notes list a "new/adjusted Rx" of "double mat."

IV.  Discussion

    A.  Standard of Review

Plaintiff filed this complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows the court to dismiss the case upon finding that the action is "frivolous or malicious," "fails

---

[4] Plaintiff attaches notes of a follow-up visit on March 23, 2015, at which another three x-rays of his right foot were taken. He was given a renewed prescription for Tramadol. (DE# 1-2 at 8). Although the notes from this visit recommend "double matt x 4 weeks," Plaintiff complains only that surgeons did not recommend an extra mattress in January and February 2015.

to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed sua sponte "at any time" under 28 U.S.C. §1915(e)(2)(B). *Neitzke*, 490 U.S. 319. The statute also provides for the screening of complaints "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Pro se complaints are held to a less stringent standard than formal pleadings drafted by attorneys, and courts will liberally construe a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). However, "[t]he 'special judicial solicitude' with which a district court should view ... pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dept. of Soc. Servs. for City of Baltimore,* 901 F.2d 387, 391 (4th Cir.1990). "Liberal construction" does not mean that courts can ignore a clear failure to allege facts that set forth a cognizable claim, *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir.2012), or that courts must "conjure up questions never squarely presented," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986).

B. Analysis

1. Alleged "deprivation of medical care"

While the Eighth Amendment "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), prisoners are entitled to "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth

Amendment claim for constitutionally inadequate medical care, a Plaintiff must allege acts or omissions harmful enough to constitute "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The alleged deprivation must be objectively sufficiently serious, *i.e.* the deprivation must be a "denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir.2008). "[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995). As for the subjective prong, "deliberate indifference" is a very high standard requiring more than mere negligence. *Estelle*, 429 U.S. at 105–06; *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999). The defendants must have actually known of and ignored a detainee's serious need for medical care. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575–76 (4th Cir.2001).

Plaintiff's Complaint fails to state a claim of "deliberate indifference to serious medical needs" against the Defendants. Plaintiff complains of two instances in January and February 2015 when he was allegedly denied an "extra" mattress. He blames the surgeons for not recommending an extra mattress on those occasions. Essentially, Plaintiff has sued the prison administrators and staff for not giving him an extra mattress that the surgeons did not even recommend at that time. The Defendants (prison administrators and staff) were not "deliberately indifferent" on such basis, particularly in light of the considerable amount of continuing medical care the Plaintiff admittedly received. Plaintiff received prompt medical treatment at the time of booking, as well as continuing follow-up care with various orthopedic specialists, who took numerous x-rays and prescribed pain medication. Plaintiff does not complain that he did not have

Page **7** of **12**

a mattress, he merely complains that he should have had an "extra" mattress. *See, e.g, Vinning v. Feinerman*, 2011 WL 2461843 (S.D.Ill. May 24, 2011) (after prisoner sued because he was dissatisfied with physician's decision not to recommend an extra mattress, court observed that the alleged "deprivation of extra bedding after medical staff exercised their medical judgment is far from a denial of minimal civilized measure of life's necessities… he had at least one mattress and one pillow, therefore, he cannot reasonably claim that he was denied a minimal civilized measure of life's necessities"), *adopted by* 2011 WL 2443685 (S.D.Ill. June 17, 2011).

Although Plaintiff makes much of the initial recommendation on October 21, 2014 for a "double mat" for ten (10) days, nothing in such medical note indicates that this was an ongoing recommendation "until his release in January 2015." The attached follow-up notes from October 27, October 28, November 24, 2014, and January 26, February 23, 2015 do not reflect any recommendation for an extra mattress. Even if one surgeon initially recommended an extra mattress for 10 days, other surgeons subsequently did not make such recommendation. A mere difference of medical opinions between doctors does not indicate "deliberate indifference." *See e.g., Hodge v. Perilli*, 2010 WL 3932368 (S.D.N.Y. Sept. 30, 2010) ("a difference of opinion ... among medical professionals ... as to the appropriate course of medical treatment does not in and of itself amount to deliberate indifference"). The fact that one surgeon initially recommended an extra mattress does not state a constitutional violation as to Plaintiff's medical care in January and February of 2015. The surgeons responded to Plaintiff's complaints and prescribed treatment. Plaintiff's claim amounts only to a difference of opinion as to the appropriate medical treatment among doctors and does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 106. Moreover, the prison administrators and staff were not "deliberately indifferent" to any serious medical needs of Plaintiff. The alleged facts do not plausibly establish that Plaintiff

faced a substantial risk of serious harm due to the denial of an extra mattress, or that the Defendants knew of and disregarded any risk of serious harm. *Farmer*, 511 U.S. at 847. Plaintiff received a considerable amount of medical care, including care from orthopedic specialists.

To the extent Plaintiff disagrees with various surgeons, disagreement between an inmate and a physician regarding the proper course of treatment does not indicate "deliberate indifference" and provides no basis for relief under § 1983. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975); *and see, e.g., Fernandez v. Risenhoover*, 399 F.App'x 260, 2010 WL 3988988 (9th Cir.(Cal.) Oct. 12, 2010) (holding that inmate received extensive medical care, and the alleged refusal to provide an extra mattress failed to state a claim for deliberate indifference to serious medical needs). While the Constitution requires that prisoners be provided with a certain amount of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Thomas v. Anderson City Jail*, 2011 WL 442053, *3 (D.S.C. Jan. 19, 2011). Plaintiff's belief that he should have received additional or different treatment does not constitute deliberate indifference to his serious medical needs. *See Davis v. Young*, -- F.App'x --, 2015 WL 5131669 (5th Cir. (La.) Sept. 2, 2015) (dismissing complaint for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, where plaintiff alleged that he was not provided with extra mattress); *Nunn v. N.C. Legis.,* 2015 WL 1713885 (E.D.N.C. April 15, 2015) (dismissing complaint pursuant to § 1915(e)(2)(B)(ii) where plaintiff's allegations amounted to "nothing more than a disagreement with prison officials" over the need for an extra mattress). The alleged facts do not plausibly establish that Plaintiff faced a substantial risk of serious harm due to the denial of an extra mattress, or that the Defendants knew of and disregarded such a risk. *Farmer*, 511 U.S. at 847.

To the extent Plaintiff is alleging negligence or medical malpractice, it is well-settled that "an inadvertent failure to provide adequate medical care" does not meet the standard required to claim an Eighth Amendment violation, nor does "mere negligence or malpractice." *Estelle*, 429 U.S. at 105–06; *Daniels v. Williams*, 474 U.S. 327, 335–36 n.3 (1986).

Although Plaintiff wishes to vent his anger at various prison administrators and personnel, the alleged refusal to provide an extra mattress in January and February 2015 did not interfere with any medical recommendations at that time. The notes attached by the Plaintiff to his Complaint reflect that the surgeons did not recommend an extra mattress in those months. Plaintiff cannot complain of "indifference" when prison staff followed the surgeon's recommendations. Although Plaintiff seeks to allege "deliberate indifference to serious medical needs" against the non-medical personnel Defendants, the Complaint fails to state a claim against them because prison officials are "entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deemed necessary and appropriate for the prisoner." *Asbury v. Tartarsky*, 2015 WL 1120081, *4 n.5 (D.S.C. Mar. 12, 2015), *aff'd by* -- F.App'x---- (4th Cir.(S.C.) Sep. 14, 2015).

Additionally, review of the Complaint reflects that Plaintiff does not allege any personal participation by the supervisory Defendants. An individual defendant is not liable under § 1983 absent personal involvement. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.... each Government official, his…title notwithstanding, is only liable for his…own misconduct"). The factual allegations of the Complaint do not even mention the supervisory Defendants. It is well settled that *respondeat superior* is not applicable in § 1983 actions. *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 694 (1978). Defendants cannot be held liable based merely on their positions as supervisors. *See e.g., Hodge v. Sidorowicz*, 2011 WL 6778524, *4 (S.D.N.Y., Dec. 20, 2011), *adopted by* 2012 WL 701150 (S.D.N.Y. Mar. 06, 2012) (dismissing "double mattress" claim against four defendants for failure to plead their personal involvement). Plaintiff has not alleged any facts in the Complaint from which the Court could infer that any Defendant, knew of and purposefully disregarded any serious medical need. *See e.g., Sharpe v. S.C. Dept. of Corr.*, -- F.App'x --, 2015 WL 1500680 (4th Cir. Apr. 3, 2015); *Martin v. Roche*, 2009 WL 32635, *11 (C.D.Cal. Jan. 05, 2009), *aff'd by,* 472 F.App'x 792 (9th Cir. 2009), *cert. denied*, 133 S.Ct. 480 (2012). Plaintiff's Complaint, therefore, fails to state an Eighth Amendment claim.

 2.  Alleged "deprivation of property"

 Plaintiff complains that he was charged $10.00 instead of $5.00 for a medical visit on January 26, 2015. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As this Court has previously explained to Plaintiff, this constitutional "due process" guarantee is not implicated by the negligent act of a governmental official causing unintended loss of or injury to life, liberty, or property. *Daniels*, 474 U.S. at 335–36 n.3. In other words, a claim of negligence is not actionable under 42 U.S.C. § 1983. *Id.*

 To the extent Plaintiff's allegations are construed as claiming that an unidentified person on the GCDC medical staff overcharged him intentionally rather than negligently (*i.e.*, "obtained funds under false pretenses"), an intentional deprivation of property by a governmental employee does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In South Carolina, a prisoner may bring a state action for recovery of personal property against officials who deprive the prisoner of

property without state authorization. *Bogart v. Chapell*, 396 F.3d 548, 561–63 (4th Cir. 2005) (finding that South Carolina provides a meaningful post-deprivation remedy for alleged property loss); *McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (same, citing S.C. Code Ann. § 15-69-10). Such state law provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Bogart*, 396 F.3d at 561 (citing *Hudson*, 468 U.S. at 533). Plaintiff has an adequate state remedy available to address the alleged overcharge for the medical visit, and therefore this claim is subject to summary dismissal.

V.   Recommendation

Accordingly, the Magistrate Judge recommends that the complaint (DE#1) be **summarily dismissed** with prejudice; the Complaint fails to state a claim for relief, and therefore, dismissal of this Complaint counts as a "strike" for purposes of 28 U.S.C. § 1915(g).

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

October 21, 2015
Charleston, South Carolina

**The parties are directed to note the <u>important information</u> in the attached Notice of Right to File Objections to Report and Recommendation.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).